NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| REBECCA ANNETTE EUSEY | ) | CASE NO. 1:20cv2849 |
| | ) | |
| Plaintiff, | ) | JUDGE RUIZ |
| | ) | United States District Judge |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant, | ) | |

**Introduction**

Before me by referral[1] is an action by Rebecca Annette Eusey under 42 U.S.C. §402(g) seeking judicial review of the 2020 decision of the Commissioner of Social Security that denied Eusey's 2018 applications for disability insurance benefits and supplemental security income.[2] The Commissioner has filed the transcript of the administrative proceedings.[3] Under terms of my initial[4] and procedural[5] orders, the parties have briefed their positions[6] and submitted supplemental

---

[1] Pursuant to General Order 2022-03, the case was re-assigned to United States District Judge David. A. Ruiz in a non-document order entered February 23, 2022. That re-assignment did not alter the prior referral to me under Local Rule 72.2 entered as a non-document order on December 29, 2020.
[2] ECF No. 1.
[3] ECF No. 11. Pursuant to Local Rule 16.3.1(d), the filing of the administrative record constitutes the Commissioner's answer.
[4] ECF No. 5.
[5] ECF No. 12.
[6] ECF Nos. 15 (Eusey), 17 (Commissioner), 21 (Eusey reply).

fact sheets and charts.[7] The parties have met and conferred with the objective of clarifying or reducing the matters at issue.[8]

For the following reasons, I will recommend that the decision of the Commissioner be affirmed.

### Facts

Eusey, who was 56 years old at the time of the hearing,[9] has a high school education, with some college,[10] and previously worked as a welding machine tender and a home attendant.[11]

As relevant here, the ALJ found that Eusey did not meet Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine).[12] As to Listing 1.02, the ALJ concluded that "the record does not support an inability to ambulate effectively."[13] Regarding Listing 1.04, the ALJ determined that "the record does not support motor loss along with sensory or reflex loss, positive straight-leg raising testing (both sitting and supine, positive for radicular pain), spinal arachnoiditis manifested by severe burning or painful dysesthesia, resulting in the need for changes of position or posture more than once every 2 hours, or lumbar spinal stenosis manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively. Nor is there indication of significant difficulty using the upper extremities, as related to her cervical spine."[14]

---

[7] ECF Nos. 15, Attachment (Eusey), 18 (Commissioner).
[8] ECF No. 20.
[9] Tr. at 39.
[10] *Id*. at 40.
[11] *Id*. at 56.
[12] *Id*. at 21.
[13] *Id*.
[14] *Id*.

The ALJ characterized Eusey's testimony as being that she is "unable to work due to her pain in her back and hip and difficulty walking. [Eusey] reported some relief from injections in her hip, but that they wore off quickly. [Eusey] reported using a rollator walker, which she indicated was prescribed by her orthopedic treating source in May 2018. She testified that does not always use the walker as it is difficult to get into and out of her car and has 'adapted' to different situations, but uses it both in and out of the home."[15]

Later, the ALJ specifically addressed the use of a walker as follows:

While [Eusey] alleged use of a prescribed walker, the evidence of record is generally devoid of reports that she presented with any assisted device during office visits, and the record does not contain explicit medical orders or prescriptions for an assistive device of any type. While [Eusey's] gait was at times noted as abnormal, the record shows that it was normal at other times, further eroding the alleged need for daily use of an assistive device. Even if a prescription for an assistive device was noted in the record, the prescription alone would not support permanent medical necessity for any assistive device. SSR 96-9p provides that 'to find that a hand-held assistive device to aid in walking is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).' Here there is simply testimony that she had a prescription without documentation describing the circumstances for which it was needed. There is also significant evidence that she was able to ambulate without it, as she typically appeared for treatment without it, despite having some deviations in her gait. [Eusey] did not meet her burden to establish the medical necessity for a cane or walker.[16]

The ALJ then went on to observe that, notwithstanding Eusey's failure to establish a medical need for a walker, "[c]onsidering her subjective complaints of pain in her right hip, I found that [Eusey] cannot push, pull, or operate foot controls with the lower right extremity. Considering her back and neck pain, in combination with her borderline obesity, and episodic gait abnormalities, I found that she can occasionally climb ramps and stairs, occasionally stoop and

---

[15] *Id*. at 22.
[16] *Id*. at 25.

crouch; never kneel, crawl or climb ladders, ropes or scaffolds; and cannot work at unprotected heights."[17]

Then the ALJ considered the opinion evidence. To that end, she found the opinions of the state agency reviewers to be persuasive.[18] Further, she also found the opinion of the medical consultative examiner – Dr. Mattingly – to be persuasive.[19] In particular, she noted that Dr. Mattingly found that Eusey was capable of sedentary work and further stated that while Dr. Mattingly "noted some slight weakness in the hips, there were no identified findings that would support listing level dysfunction."[20] The ALJ further observed that "Dr. Mattingly is an expert and had the opportunity to personally examine [Eusey], and carried out a much more detailed physical examination than the bulk of [Eusey's] own treating sources, which further supports the findings made herein."[21]

The ALJ continued by evaluating the third party function reports of Eusey's mother and sister.[22] The ALJ concluded that these reports were "no more supportable or consistent with the evidence of record than [Eusey's] own subjective reports, and, therefore, have not been found persuasive or adopted for the same reasons discussed in the body of this decision."[23]

---

[17] *Id.*
[18] *Id.* at 25-26.
[19] *Id.* at 26.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

Finally, the ALJ determined that Eusey was, consistent with the RFC, capable of performing her past relevant work as a welding machine tender, as such work was actually performed.[24] Thus, Eusey was found not disabled.[25]

## Analysis

<u>Issues presented</u>

1. The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, [because] the decision in this case was by an ALJ who derived her authority from Andrew Saul [that decision] was constitutionally defective.

2. The ALJ committed harmful error when her RFC did not consider the effects of the combination of Eusey's severe impairments on her ability to perform her past relevant work.

3. At Step Four of the Sequential Evaluation, the ALJ's RFC was not supported by substantial evidence when she erroneously found that Eusey could still perform her past relevant work as a machine welder tender.[26]

<u>Discussion</u>

As to the first issue – the allegedly defective appointment of the Commissioner – I note again, as I have previously when this issue has been raised, that I have not found, nor have I been cited to, an example of where this Court has agreed with Eusey's argument. In fact, the question

---

[24] *Id.* at 26-27.
[25] Id. at 27.
[26] ECF No. 15 at 1.

was addressed in a lengthy and substantial opinion in *Butcher v. Commissioner*[27] from the Southern District of Ohio. I hereby cite that decision and incorporate its reasoning and conclusion herein. Thus, I recommend that Eusey's first issue be rejected.

Issues two involves Eusey's use of a walker and/or her ability to ambulate effectively. Essentially Eusey makes three arguments in that regard in her briefs:

1. In her brief on the merits, Eusey first contends that the ALJ erred in assessing whether she met the relevant listings because she was unable to ambulate effectively as required by the listings - a fact, she claims, is established by the evidence that Eusey's physician "had prescribed a walker and [Eusey] used it on and off all the time."[28] She contends that the ALJ's analysis of this matter was "perfunctory" and "failed to provide sufficient information justifying her findings so this Court can facilitate meaningful judicial review."[29]

2. Next, Eusey asserts that, even if she does not meet a listing, the ALJ "failed to consider the combination of Eusey's spinal impairments and the resulting pain."[30] To that end, Eusey cites her own testimony that she is unable to walk without a walker, similar reports from her mother and sister, and the clinical evidence of her degenerative disc disease.[31] She argues that the ALJ "failed to articulate any rationale beyond a boilerplate paragraph" for downgrading Eusey's complaints of pain and "disregarded any medical findings that would have precluded Eusey from being able to perform her past relevant work as a welding machine tender."[32]

---

[27] 2021 WL 6033683 (S.D. Ohio Dec. 21, 2021) (R&R), adopted 2022
[28] ECF No. 15 at 12.
[29] *Id.* at 13.
[30] *Id.*
[31] *Id.* at 13-14.
[32] *Id.* at 15.

3. Finally, in her reply brief, essentially suggests that the finding by the state agency reviewers that Eusey was capable of standing/walking for "shorter periods of time" due to her positive straight leg raise along with the severe degenerative changes of the spine, support the fact that she was unable to ambulate effectively without a walker.[33]

In consideration of the above, I note first that the term "ineffective ambulation" is a defined term in the listings. Specifically, Listing 1.00B2b states that: "Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." As the Commissioner observes, the fact that Euesey had a prescription for a walker, or that she used a walker, as she herself stated, "on and off all the time," is not proof that she was *unable* to walk without a walker.[34]

Indeed, as was discussed above, the ALJ noted that the record shows that Eusey would appear at medical appointments without a walker and that, while there were clinical notations of impaired gait, there were other instances where it was described as normal. Further, the ALJ also noted that Eusey did not have a prescription for use of a walker or assistive device that was sufficiently specific as to meet the requirements of SSR 96-9p.

Thus, contrary to the assertion that the ALJ relied solely on "boilerplate" language and insufficient explanation to find that Eusey's subjective complaints of pain and testimony about use of a walker were not persuasive, I recommend finding no error in the ALJ's decision to not require the use of a walker or other hand-held assistive device in the RFC.

---

[33] ECF No. 21 at 1-2.
[34] ECF No. 17 at 16-17.

Finally, issue three concerns the finding by the ALJ, with the testimony from the VE, that Eusey could perform her past relevant work as a welding machine tender at the sedentary level, not at the medium exertion level, as it is generally performed. Eusey contends that her ability to perform her job in the past at the sedentary level may have been because she received an accommodation from her employer that might not be available from another employer.[35]

As the Commissioner observes, however, the ALJ's finding here was fully consistent with the VE's testimony that Eusey's past relevant work as a welding machine tender was actually performed at a sedentary level.[36] As the Commissioner further observes, agency regulations provide that even if there were accommodations in the previous employment, the agency adjudicators are required to find the claimant is capable of past relevant work "as he or she performed it even if the accommodations might not be available in other workplaces."[37]

I further note that the ALJ specifically addressed this point. She noted that "[w]hile the vocational expert noted that [Eusey'] description [of how her past work was actually performed] could have been accommodated work, the evidence does not support this."[38] To that point, the ALJ noted that in her past work Eusey testified that she "was allowed to stand at times, and was only assigned to seated work due to her known back issues, she also testified she was paid on the same scale as other employees and met her production metrics." [39]

---

[35] ECF no. 15 at
[36] Tr. at 26.
[37] ECF No. 17 at 20 (citing SSA POMS DI 25005.020(F)).
[38] Tr. at 27.
[39] *Id.*

Accordingly, I find no error in the finding that Eusey can perform her past relevant work as a welding machine tender, as such work was actually performed. Thus, I recommend that Eusey's claim in this regard be denied.

## Conclusion

For the reason stated, I recommend that the decision of the Commissioner here be affirmed.

Date: 08/29/22                                                                                    s/William H. Baughman, Jr.
                                                                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Any party may object to this Report and Recommendation.  To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this Report and Recommendation.  If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it.  If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.